# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

LAURA SMITH,

    Plaintiff,

vs.                                     Case No. 4:06cv496-WS/WCS

JACOBS ENGINEERING GROUP, INC.,

    Defendant.

_____/

## REPORT AND RECOMMENDATION ON DOCS. 90 AND 92

    Plaintiff filed a motion for FED. R. CIV. P. 37 sanctions for Defendant's failure to disclose and produce documents at the deposition of Defendant's retained expert, Michael Woodhouse, Ph.D. Doc. 90. Plaintiff also filed a supplemental motion, docketed as a second motion. Doc. 92. These two motions were supplemented by a notice of filing an exhibit, doc. 95, and an enlarged exhibit, doc. 97. Defendant filed a response. Doc. 125.

    Plaintiff then filed a third motion, doc. 105, and a corrected motion, doc. 106, for sanctions and to strike the testimony of Dr. Woodhouse pursuant to FED. R. EVID. 104(a) and 702, "for repeated false testimony given in the State of Florida concerning his prior

opinions being stricken." The corrected motion, doc. 106, replaces the first motion, doc. 105. The motion is supported in part by a notice of filing of excerpts from a deposition of Dr. Woodhouse in a state case. Doc. 109. Defendant filed a separate response to this motion. Doc. 124. I will address this third motion, doc. 106, in a separate report and recommendation to be filed in a day or so.

**Plaintiff's first motion for sanctions for failure to disclose, doc. 90**

Plaintiff asserts that the deposition of Dr. Woodhouse took place on January 29, 2008. Doc. 90, p. 1. A subpoena duces tecum was served upon Dr. Woodhouse, requiring that he produce "1,680 pages of documents," but Plaintiff asserts that he failed to produce them at the deposition. *Id.* Among the documents sought and not produced were the following:

    1. All emails between Dr. Woodhouse and Hank Sadler, Steven Hans, Sebastian Bawab, and Gray Robinson.

    2. Copies of Dr. Woodhouse's master's thesis, doctoral dissertation, and three other publications, which are listed by title.

    3. The original iteration of the MADYMO modeling simulation[1] performed by Dr. Steven Hans.

    4. The "input files for the MADYMO modeling simulation created by Dr. Hans and Dr. Bawab and relied upon in the subject matter."

    5. The simulation contained on the BRL website.

Doc. 90, pp. 2-4.

---

    [1] This apparently is a computer modeling of the way in which the accident may or may not have injured Plaintiff.

The gist of this motion is that during the deposition of Dr. Woodhouse, Plaintiff learned that Drs. Hans and Bawab assisted in the preparation of the expert opinions of Dr. Woodhouse. Plaintiff learned that Dr. Hans prepared the computer modeling of the accident for use by Dr. Woodhouse. Plaintiff contends that Dr. Woodhouse does not have the education needed to testify as an expert, but Dr. Hans does. Plaintiff argues that Drs. Hans and Bawab should have been disclosed as defense experts but were not. "Dr. Woodhouse testified at this deposition that he relied upon Hans and Bawab's MADYMO modeling and data entry for his opinions." Doc. 90, p. 4. Plaintiff argues that Drs. Hans and Bawab should have been disclosed as expert witnesses by Defendant pursuant to Rule 26(a)(2), and because the information required by that Rule was not provided, "this Court should invoke the exclusion sanction of Rule 37(c)(1) and preclude any testimony as to Drs. Hans' and Bawab's opinions relied upon by Dr. Woodhouse." *Id.*, p. 6. Plaintiff also asks that the Court strike Dr. Woodhouse as an expert or, in the alternative, allow Plaintiff to again depose Dr. Woodhouse regarding the late disclosed documents and preclude any testimony by Drs. Hans and Bawab. *Id.*

Plaintiff contends that Defendant should have produced these documents in the initial disclosures of expert opinion pursuant to Rule 26(a)(2). Plaintiff also contends that the failure to produce these documents violated this court's order of November 7, 2007.

**Plaintiff's supplemental motion for sanctions, doc. 92**

Pursuant to Rule 37, Plaintiff seeks to exclude Dr. Woodhouse from testifying at trial, alleging that Dr. Woodhouse misrepresented his qualifications as an expert. Plaintiff also again seeks exclusion of the testimony of Dr. Woodhouse because, prior to

the deposition, Dr. Woodhouse failed to disclose that he relied upon the expert work of Drs. Hans and Bawab in formulating his opinions.  Plaintiff states that as a consequence of learning of the expert involvement of Drs. Hans and Bawab at this late date, and the numerous documents that were not produced at the deposition, the deposition of Dr. Woodhouse was a "waste of substantial time and money," and depositions of Drs. Hans and Bawab are now needed.  Doc. 92, p. 6.

Plaintiff argues from the above that Dr. Woodhouse "was not competent by training to issue the opinions in his report."  *Id.*  Plaintiff asks that Dr. Woodhouse be stricken as a witness or, in the alternative, that Defendant reimburse Plaintiff for the cost of deposing Dr. Woodhouse and produce Drs. Bawab and Hans in Tallahassee for a deposition at least 10 days before trial.  *Id.*

**Court order, doc. 90**

Plaintiff contends that Defendant was ordered on November 7, 2007, to produce the documents that were not produced at the deposition of Dr. Woodhouse.  My order of November 7, 2007, granted the jointly proposed extensions of the discovery scheduled.  Doc. 46 granting doc. 43.  It did not order the production of documents.  This is not a basis for the Rule 37 sanctions that Plaintiff seeks.

**The qualifications of Dr. Woodhouse, doc. 92**

Plaintiff asserts that Dr. Woodhouse represents in his resume that his master's degree had an emphasis in neuromuscular biomechanics, but his academic transcript states that he received a master's degree in physical education.  Doc. 92, p. 2.  Plaintiff states:  "Nowhere in Dr. Woodhouse's Master's course work are there any courses taken which suggest, in any way, any training in neuromuscular biomechanics."  *Id.*  The

only possible exception was a course in the analysis of motion, but Dr. Woodhouse withdrew from that course. *Id.*, p. 3.

The "Biographical Outline" provided by Dr. Woodhouse states that he has an "MS Education, Old Dominion University, 1983, *Emphasis in Neuromuscular Biomechanics.*" DOC. 92, p. 11. He states that his Ph.D. in 1987 had an "*Emphasis in Biomechanics (Dissertation, The effects of Various Lumbar/Sacral Back support Systems Upon Human Peak Muscular Force, total Work, and Average Power).*" *Id.*

The transcript from Old Dominion University supplied by Plaintiff shows that Dr. Woodhouse obtained a master's degree in education, physical education, and a doctor of philosophy, urban services. Doc. 92-3, p. 11; p. 78 as a consolidated document.[2] The transcript shows "conc," which must mean "concentration" in "urban ed." *Id.* Of the portions that are legible, Dr. Woodhouse took courses toward these two degrees in advanced athletic training I, special topics in athletic training, physiological effects, research methods, methods of program evaluation, education statistics, urban problems – contemporary America, urban services internship, philosophy of science, and public management. *Id.* Plaintiff has supplied a more complete list. Doc. 92, p. 4.

Defendant asserts that the "emphasis" was not obtained through course work, which admittedly does not show such "emphasis," but by means of the master's thesis on "the effects of orally ingested ergogenic aid on neuromuscular fatigue patterns in human subjects." Doc. 125, p. 7. Likewise, Defendant notes that Dr. Woodhouse's dissertation was in biomechanics. Defendant states that a copy of the master's thesis was provided to Plaintiff, probably after the deposition of Dr. Woodhouse.

---

[2] This document is somewhat legible as a PDF document on ECF at 300%.

The assertion in this Biographical Outline that Dr. Woodhouse's master's degree and doctorate had an "emphasis" in biomechanics and neuromuscular biomechanics seems to be accurate, though that assertion appears to be based almost entirely on his master's thesis and doctoral dissertation.  A master's thesis and a doctoral dissertation are significant independent post-graduate efforts that give emphasis to a particular post-graduate degree.  Of course, an advanced degree "emphasis" might also be provided by course work, but not necessarily so.

In any event, this is a matter going only to Dr. Woodhouse's credibility.  The last degree was in 1987, and he has had 20 years of experience that may or may not qualify him as an expert.  Indeed, the master's thesis and the dissertation may be important in part in qualifying Dr. Woodhouse as an expert.  This is not a basis to preclude Dr. Woodhouse from testifying.

**Rule 37 sanctions for failing to comply with the Rule 45 subpoena duces tecum**

A subpoena issued pursuant to Rule 45 is enforced through the sanctions provided by Rule 45.  Matter of Certain Complaints Under Investigation by an Investigating Committee of Judicial Council of Eleventh Circuit, 783 F.2d 1488, 1495 (11th Cir.), *cert. denied*, 477 U.S. 904 (1986).  Rule 45 is the only authority for enforcement of such a subpoena; sanctions pursuant to Rule 37 are not available.  Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 and n.4 (9th Cir. 1983); Securities and Exchange Comm. V. Kimmes, 1996 WL 734892 (S.D. N.Y., Dec. 24, 1996) (No. M18-304); Peacock v. Merrill, 2008 WL 687195 (M.D. La. Mar. 10, 2008) (No. 08-01-B-M2).  Rule 37 is not a basis for sanctions for failure to comply with the Rule 45 subpoena.

Case No. 4:06cv496-WS/WCS

**Rule 26(a)(2), failure to disclose reliance upon the expertise of Drs. Hans and Bawab, docs. 90 and 92**

Rule 26(a)(2)(A) requires disclosure of the "identity of any witness it may use at trial to present evidence under Federal Rule of Evidence, 702, 703, or 705." Rule 26(a)(2)(B) requires that this disclosure be accompanied by a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(A). Defendant has not retained either Dr. Hans or Dr. Bawab as experts and does not intend to call them as witnesses at trial. Doc. 125, pp. 3-4. Thus, Defendant was not required to disclose their identity or provide their expert reports. Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 182 n. 13 (2d Cir. 2004) (while a party is required to give notice pursuant to Rule 26(a)(2)(A) of the identity of an expert that it may use as an expert witness at trial, it need not provide an expert report pursuant to Rule 26(a)(2)(B) if the witness was not retained or specially employed); Watson v. United States, 485 F.3d 1100, 1107 (10th Cir. 2007) (compliance with Rule 26(a)(2) is required only if the expert has been retained or is specially employed regularly giving expert testimony; Rule 26(a)(2) did not apply to the clinical director of the Bureau of Prisons' Federal Transfer Center).

Whether, pursuant to Rule 26(a)(2)(B)(ii), Defendant should have disclosed information provided to Dr. Woodhouse by either Dr. Hans or Dr. Bawab, and relied upon by him in the formulation of his expert opinion, is another matter. Defendant states that "[t]o the extent the documents identified by Plaintiff [in the subpoena duces tecum] were required to be produced by Federal Rule of Civil Procedure 26(a)(2)(B),

they were in fact produced long before Plaintiff's deposition of Dr. Woodhouse."  Doc. 125, p. 1.  Defendant also represents that Dr. Woodhouse did not rely upon emails between him and Sadler, Hans, Bawab, or the law firm of Gray Robinson, P.A., in formulating his expert opinion, and thus did not need to produce them as Rule 26(a)(2)(B) initial disclosures.  Doc. 125, p. 2.  Defendant represents that Dr. Woodhouse did not rely upon his own master's thesis, his doctoral dissertation, or other publications, in forming his expert opinion in this case.  *Id.*  Defendant asserts that while it is true that the "original iteration" of the MADYMO modeling simulation was performed by Dr. Hans, it "was not relied upon by Dr. Woodhouse in forming his expert opinion." *Id.*, p. 3.  Defendant states that Plaintiff received the input files created by Dr. Woodhouse in January, 2008.  *Id.*  Finally, Defendant asserts that Dr. Woodhouse did not rely upon the "simulations contained on the BRL website."  *Id.*, p. 4.

Since Dr. Woodhouse did not rely upon his master's thesis, his doctoral dissertation, or his publications in forming his expert opinion, he was not required by Rule 26(a)(2)(B)(ii) to disclose them.  The data that Dr. Woodhouse entered into the program, and the model itself, has already been provided Plaintiff, so that is not at issue here either.  But Dr. Woodhouse testified at his deposition:  "Dr. Hans created the model, I provided the inputs, and Dr. Bawab peer reviewed the model."  Doc. 92-2, p. 40; p. 107 as a consolidated document.  Dr. Woodhouse said he was talking about the MADYMO model.  *Id.*  He said that there were "several iterations in the model and I reviewed them from a biomechanical perspective and I look at the data and Dr. Bawab reviews them from a mechanical engineering standpoint to make sure it's valid and reliable."  *Id.*, p. 41; p. 108 as a consolidated document.  When asked if he had told

counsel for Defendant that Drs. Hans and Bawab were involved in the MADYMO program and analysis before today, Dr. Woodhouse said "no." *Id. See also* doc. 92-2, p. 49; p. 116 as a consolidated document.

Dr. Woodhouse then said that Dr. Hans created the model, and Dr. Woodhouse reviewed the model and awaited the approval of Dr. Bawab. *Id.*, p. 43; p. 110 as a consolidated document. Dr. Woodhouse created a "case sheet" from the data relevant to this case and then sent it to Drs. Hans and Bawab, and they entered that case-specific date into the MADYMO program. *Id.*, pp. 44-45; pp. 111-112 as a consolidated document. Dr. Hans then created a MADYMO model from the data he received from Dr. Woodhouse. *Id.*, p. 46; p. 113 as a consolidated document. Dr. Woodhouse said that the model had been provided to counsel for Plaintiff on a DVD prior to the deposition. *Id.*, pp. 47-48; pp. 114-115 as a consolidated document. He said that there was "actually one iteration and you should have it." *Id.*, p. 48; p. 115 as a consolidated document. Dr. Woodhouse said that he *and* Dr. Bawab "sign off" on the technical aspects of the MADYMO model "in terms of the MADYMO inputs." *Id.*, p. 49; p. 116 as a consolidated document. Dr. Woodhouse said that he relies upon the expertise of Dr. Bawab as a mechanical engineer for the validity and reliability of the model. *Id.* Dr. Woodhouse said that if he looked at the motion of the dummy in the model, observing the neck extension and the forces on the neck at that time, and if the result was not consistent with the biomechanics of the accident or the medical findings, "there must be an engineering reason," so he would consult with Dr. Bawab as to the "mechanical engineering reason why the model is performing that way." *Id.*, pp. 50-51; pp. 117-118

as a consolidated document.  He said: "that's done all the time in modeling."  *Id.*, p. 51; p. 118 as a consolidated document.

>Rule 26(a)(2)(B) provides in part that an expert report shall contain:
>
>(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
>(ii) ***the data or other information considered by the witness in forming them***;

FED. R. CIV. P. 26(a)(2)(B)(i) and (ii) (emphasis added).

Plaintiff, therefore, is correct.  Without the knowledge of counsel of Defendant, Dr. Woodhouse considered "data or other information" from both Dr. Hans and Dr. Bawab in the formulation of his expert opinion, and he did not disclose this data or other information to Plaintiff as required by Rule 26(a)(2)(B)(ii).  Dr. Woodhouse himself said that he must rely on the expertise of both Dr. Hans and Dr. Bawab to validate his own expert opinion.  It turns out, therefore, that the expert opinion that Defendant will rely upon at trial will be like a three-legged stool, and the portion supplied by Dr. Woodhouse is just one leg.  While Defendant did not have to identify Drs. Hans and Bawab as experts or provide expert reports from them, the data or other information they provided to Dr. Woodhouse to validate his opinion had to be disclosed with Dr. Woodhouse's expert report.

Rule 37(c)(1) provides the sanction if the expert report is deficient and the deficiency is not harmless:

>Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a party "that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed."  Fed.R.Civ.P. 37(c)(1).

> . . . Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, *see Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir.2000), compliance with the requirements of Rule 26 is not merely aspirational.

Cooper v. Southern Co., 390 F.3d 695, 728 (11th Cir. 2004), *cert. denied*, 126 S.Ct. 478 (2005).  It is "within the sound discretion of the trial judge to sanction plaintiffs for their failure to disclose by enforcing the unambiguous terms of Rule 37(c)" if a party fails to comply with the explicit requirements of Rule 26.  *Id.*  "The directives [of Rule 26(a)(2)] are mandatory and self-executing."  Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 59 (1st Cir. 2001).  "Substantial justification" is "justification to a degree that could satisfy a reasonable person that the parties could differ as to whether the party was required to comply with the disclosure request."  Nyguyen v. IBP, Inc., 162 F.R.D. 675, 679 (D. Kan. 1995); Stallworth v. E-Z Serve Convenience Stores, 199 F.R.D. 366, 368 (M.D. Ala. 2001).[3]

The 1993 Advisory Committee Notes provide examples of situations which relieve the defaulting party from this sanction, and is particularly illuminating concerning the issue of harmlessness:

> While the Rule itself does not specifically delineate the types of non-disclosure that are harmless, the advisory notes to the 1993 amendment of Rule 37 do provide some guidance as to the type of non-disclosure envisioned as harmless: Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety

---

[3] The phrase, therefore, has the same meaning as "substantially justified" for Rule 37(a) purposes.  A motion is "substantially justified" for purposes of Rule 37(a) if "it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'"  Devaney v. Continental American Insurance Co., 989 F.2d 1154, 1163 (11th Cir. 1993), *quoting,* Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (concerning the same phrase in the Equal Access to Justice Act).

of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the names of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures. In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party. Advisory Notes to 1993 Amend.Fed.R.Civ.P. 37(c).

In re TMI Litigation Case Consol. II, 922 F.Supp. at 1003. "A party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." Stallworth, 199 F.R.D. at 369.

> "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996). A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998). Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *See Newman v. GHS Osteopathic Inc.*, 60 F.3d 153 (3d Cir. 1995) (quoting *Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir. 1995)); *Cf. $9,041,598.68*, 163 F.3d at 252 (enumerating a similar list of factors to determine whether inclusion of last-minute evidence is harmless); *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 1980) (applying these four factors to determine whether the district court abused its discretion in allowing testimony not specified in the pretrial order).

Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

The failure to disclose this information in early January, 2008, when the initial expert disclosures were to have been made, is not harmless in this instance, assuming that the trial will soon take place. The time for taking the deposition of Dr. Woodhouse was running out, and the deposition was taken on January 29, 2008. Plaintiff could not

have known that Dr. Hans and Dr. Bawab were involved in the formulation of Dr. Woodhouse's opinion until she took the deposition of Dr. Woodhouse, and by then it was too late to be of any good in the deposition of Dr. Woodhouse.  Indeed, counsel for Defendant did not know of the problem until Dr. Woodhouse revealed it at the deposition.  It is no wonder that the Rule 26(a)(2) disclosures were defective.

Absent an extension of the discovery period and a delay of the trial, there is only one fair remedy:  the exclusion of expert opinion from Dr. Woodhouse at trial.  If the trial is to take place as originally planned, there is too little time for Defendant to correct the problems with the expert opinion of Dr. Woodhouse so that Plaintiff may discover what Drs. Hans and Bawab contributed to the opinion or, for that matter, for Plaintiff to correct the problem with the expert opinion of Dr. Booeshaghi.  See my last report and recommendation, doc. 123.

If the district judge is inclined to reopen discovery, however, to permit Defendant to rectify this serious error and to delay the trial, the court should make it a two-way street.  Plaintiff should be permitted to allow her expert, Dr. Booeshaghi, to reconsider his opinion, either justifying the use of the acceleration rate of .53 G, or adopting another rate based upon other considerations.  If this occurs, then perhaps both parties should bear their own expenses of continuing discovery.

Accordingly, it is **RECOMMENDED** that Plaintiff's motions for Rule 37 sanctions, docs. 90 and 92, be **GRANTED** and the expert opinion from Dr. Woodhouse be excluded from trial.

**IN CHAMBERS** at Tallahassee, Florida, on March 20, 2008.


s/ William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**