IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LAURA SMITH,

    Plaintiff,

vs.                               Case No. 4:06cv496-WS/WCS

JACOBS ENGINEERING GROUP, INC.,

    Defendant.

                                           /

## REPORT AND RECOMMENDATION ON DOC. 127

Plaintiff has moved to strike the testimony of Dr. Michael Woodhouse based upon *Daubert*. Doc. 127. Defendant has responded. Doc. 146.

Plaintiff states that Dr. Woodhouse will rely upon the opinion of Mr. Sadler concerning the physical forces involved in the collision to arrive at the change in value for the velocity of Plaintiff's vehicle (mathematically, the delta V), an opinion using a damage estimate to Plaintiff's vehicle. Doc. 127, p. 2. The damage estimate comes from Ace-Esis, a company that performs most of its appraisals for insurance companies. *Id.*, p. 3. Neither Mr. Sadler nor Dr. Woodhouse inspected the scene of the collision,

asserts Plaintiff.  Both rely also upon the accident report, photographs of Plaintiff's vehicle, and deposition testimony.  *Id.*

Plaintiff states that Dr. Woodhouse took the delta V forces calculated by Mr. Sadler to evaluate the movement of Plaintiff's body during the crash.  *Id.*  To do this, Dr. Woodhouse relied upon a mathematical computer simulation called MADYMO, created by Drs. Bawab and Hans.  *Id.*  Plaintiff asserts that Dr. Woodhouse does not have the expertise to prepare the MADYMO simulation, but has to rely upon the expertise of Drs. Bawab and Hans.  *Id.*, p. 4.

Apparently the final step performed by Dr. Woodhouse is to compare the MADYMO results to "a range of human tolerance to physical forces and applies these tolerance ranges to the Plaintiff generally."  *Id.*  The result is that Dr. Woodhouse expresses the opinion that the predicted forces applied to Plaintiff during this accident were not sufficient to cause the injury alleged.  *Id.*  Dr. Woodhouse states that about 80% of the time, it is his opinion that the forces applied to a claimant were not sufficient to cause the alleged injury.  *Id.*

Plaintiff argues that Dr. Woodhouse selected a "canned simulation from the Biodynamics Research Laboratories website."  *Id.*, pp. 5-6.  Plaintiff argues that Dr. Woodhouse has extrapolated from data prepared by Mr. Sadler, and that data is unsupported.  *Id.*, p. 6.  Plaintiff argues that Dr. Woodhouse failed to assume that Defendant's vehicle was traveling at 15 miles per hour, as stated in the crash report, and therefore had not adequately accounted for "obvious alternative explanations."  *Id.*  Plaintiff notes that Dr. Woodhouse has no professional work other than paid litigation

consultations. *Id.* Plaintiff argues that Dr. Woodhouse's opinions have been "repeatedly stricken by courts in New York, Pennsylvania and Florida." *Id.*, pp. 6-7.

In addition to, or to repeat the assertions above, Plaintiff challenges the biomechanical opinions of Dr. Woodhouse because:

    1.  Dr. Woodhouse's resume was misleading when he represented that he had taught accident reconstruction courses, and he has not taught such course and does not have a degree or certification in accident reconstruction.

    2.   Dr. Woodhouse's injury causation opinions have been stricken at least three times by other courts.

    3.  Testing that Dr. Woodhouse may have done on cadavers was without scientific controls.

    4.  Dr. Woodhouse himself did not gather the data (measurements at the scene or examinations of the damage to the vehicles).

    5.  Dr. Woodhouse relies upon the opinion of Mr. Sadler for the delta V, and those opinions are unreliable.

    6.  Dr. Woodhouse did not create the MADYMO program, and he relies upon the expertise of Drs. Bawab and Hans for that program.

    7.  Dr. Woodhouse is not a medical doctor, and cannot testify as to whether Plaintiff has suffered an injury.

    8.  Dr. Woodhouse did not determine the location of Plaintiff's headrest, the stiffness of her seat, the angle of her seat, Plaintiff's height, weight, sex, and age, whether Plaintiff anticipated the accident, the position of Plaintiff's seatbelt.
*Id.*, pp. 11-12.

With respect to the delta V opinion (which is Mr. Sadler's opinion, but will be relied upon by Dr. Woodhouse), Plaintiff cites Clemente v. Blumenberg, 183 Misc. 2d 923, 705 N.Y.S. 2d 792 (N.Y. Sup. 1999) for the proposition that the use of repair costs and photographs as a method of calculating the delta V is not a general accepted scientific method. The court in that case ruled:

> Using repair costs and photographs as a method for calculating the change in velocity of two vehicles at impact is not a generally accepted method in any relevant field of engineering or under the laws of physics. Hence, under the *Frye* test of general acceptance, the opinion upon which it relies is inadmissible. By applying the *Daubert/Kumho* factors this court also finds this methodology to be invalid. *The engineer acknowledged that this was a method that he developed which has not been scientifically tested. Indeed, the engineer, when questioned by this court whether there was any literature supporting this method of calculating change in velocity, claimed there was none.*

705 N.Y.S. 2d at 799 (emphasis added). In other words, the court had evidence from the expert himself that his method had not been scientifically tested and was not supported in scientific literature. The court said, however, that the expert could render an opinion "as to the general formula of forces upon objects provided he uses the facts in evidence." *Id.*

Plaintiff also cites Carrier v. Ramsey, 714 So. 2d 657 (Fla. 5th DCA 1998), as a case for striking the change of velocity opinion in this case. In that case, the appellate court found that the trial court had not clearly erred in refusing to let a witness testify that "the accident [a rear-end collision] did not generate sufficient force to cause any physical injury to" the claimant. 714 So. 2d at 659. The court reasoned:

> The voir dire of Phillips revealed that he had experience as an accident reconstructionist but that he held no academic degrees. When asked what data he relied upon to form an opinion in the instant case, Phillips stated that he had reviewed photographs of Garland Ramsey's

> automobile, certain depositions, and the Florida Driver's Report of Accident prepared by Garland Ramsey. On cross-examination, Phillips testified that he did not take the photographs of Ramsey's automobile and did not know the distance from which they were taken. He did not make a physical examination of either automobile involved in the accident and did not review a copy of the police report. Furthermore, he did not consider any roadside evidence and did not know the configuration of the road where the accident occurred or the weather conditions at the time. He also admitted that he did not possess any data with regard to the physical characteristics of Garland Ramsey who was sixty-eight years old at the time of the accident.

*Id.* Plaintiff concludes from this case that "where expert opinion in accident reconstruction cases are based on photographs of the automobiles, depositions or other documentary evidence only, those opinions lack scientific foundation and are unreliable as a matter of law." Doc. 127, p. 8.

> Rule 702 provides that expert opinion is admissible if:
>
> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

> *Daubert* instructs courts to consider the following factors: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (citing *Daubert*).

Plaintiff has not used the Daubert or Rule 702 factors to show a basis for striking the expert opinion of Dr. Woodhouse. Plaintiff has not presented evidence that a particular theory cannot be tested or has not been tested, or has not been subjected to peer review and publication, or has a substantial known or potential rate of error, or is

not generally accepted in the scientific community. With respect to Rule 702, Plaintiff argues that the data relied upon, photographs, the accident report, and testimony of witnesses, is not sufficient, but Plaintiff has not come forward with a scientific explanation for why that is so.

The two cases cited do not fill in this gap. This court must apply <u>Daubert</u> and Rule 702 to the facts of this case. More important, Plaintiff must come forward with a significantly more detailed explanation as to why the expected opinion of Dr. Woodhouse is not scientifically or mathematically sound. Legal precedent is of little help in resolving the scientific question.

To like effect is Plaintiff's repeated argument that other courts have precluded testimony from Dr. Woodhouse. If those courts properly applied the <u>Daubert</u> criteria to a set of facts similar to the case at bar, that would be helpful. But Plaintiff has not shown how those decisions understood the fundamentals of the science or mathematics involved, and found that the opinion of Dr. Woodhouse would be flawed.

All of the other arguments – Dr. Woodhouse's education, training, publications, defense oriented career and prior testimony, reliance upon the expertise or gathering of data by others, lack of consideration of other kinds of data that may have been available, or failure to visit the scene of the accident – have not been persuasively connected with any of the <u>Daubert</u> criteria or the criteria of Rule 702 to give rise to a cogent reason to bar him from testifying at all. An expert can rely upon the work of others, and often does, and may do so as long as the opposing party does not show that the expert work of others is fatally flawed. Perhaps a failure to visit the scene of the accident will lead to a damaging line of cross examination, but that prospect has not

been shown in this motion.  While Defendant has, in response, shown that Dr. Woodhouse has considerable education and experience in his field, an expert may have expertise that is not revealed by formal education.  Pointing to a resume that reflects irrelevant training or experience does little to apply the Daubert and Rule 702 criteria.  An expert may repeatedly give an opinion that favors one side of litigation, but if that opinion is sound science, all that remains is a potential jury argument.  An expert may not have considered the height and weight of Plaintiff,[1] or how her seat, seat belt, headrest, and body were configured just before the accident, and if Plaintiff could show, through expert explanation, how this failure renders the opinion Dr. Woodhouse scientifically unreliable, then those observations would matter.  But like all else argued in this motion, there has been no persuasive connection to Daubert or Rule 702.

The premise of Daubert and Rule 702 is that judges can understand math and science, if plainly put.  The court's role as a gate-keeper, however, is not implicated by a motion that presents no math and science.

Accordingly, it is **RECOMMENDED** that Plaintiff's motion to strike the testimony of Dr. Woodhouse, doc. 127, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 14, 2008.

                                                          **s/    William C. Sherrill, Jr.**
                                                          **WILLIAM C. SHERRILL, JR.**
                                                          **UNITED STATES MAGISTRATE JUDGE**

---

[1] Defendant disputes this allegation, and is probably correct.  Doc. 146, p. 7, n. 4.  It is not necessary here to consider this further, however, as Plaintiff failed to connect this allegation to the criteria of Daubert and Rule 702.

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**