IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


LAURA SMITH,

    Plaintiff,

vs.                               Case No. 4:06cv496-WS/WCS

JACOBS ENGINEERING GROUP, INC.,

    Defendant.

_____/


## REPORT AND RECOMMENDATION ON DOC. 193

Defendant has filed a second motion to allow the expert testimony of Dr. Woodhouse.  Doc. 186.  Plaintiff's opposition was heard today in a telephone hearing, which was recorded by the court reporter.

Defendant has taken another stab at bringing Dr. Woodhouse back into this case, having served a supplemental Rule 26 expert report upon Plaintiff on October 22, 2008.  Doc. 193-2, pp. 2-3  The supplemental report is signed by Dr. Woodhouse.  Dr. Woodhouse states that he sent the data for entry into the MADYMO program to Dr. Hans and Dr. Bawab, Dr. Hans manually entered the data, and the MADYMO program produced a report which was given to Dr. Woodhouse.  Doc. 193-2, pp. 2-3.  Dr.

Woodhouse states that he identified an error in an output file that Dr. Hans corrected for him, and that Dr. Hans made aesthetic adjustments. *Id.*, p. 3.

Dr. Woodhouse states that "Dr. Bawab then reviewed the model from the perspective of a mechanical engineer and opined that the model was 'good to go.' " *Id.*, p. 3. Dr. Woodhouse states that this review was not essential to his own opinion, "since it relates to a discrete branch of science, but it serves as a valuable check in the event a model is invalid or unreliable." *Id.* Dr. Woodhouse states that Dr. Bawab "found no engineering defect." He states that Dr. Bawab made aesthetic adjustments. *Id.*

Rule 26(a)(2)(B) provides in part that an expert report shall contain "the data or other information considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(ii). Dr. Woodhouse has now formally complied with that rule. He has provided a report that provides the information he relied upon and he has explained how he relied upon it. The aesthetic adjustments and the output correction are trivial, and could properly be explored in a deposition. The most important information is that Dr. Bawab said that in his opinion as an expert in mechanical engineering, the results were not defective. Dr. Woodhouse used that "good to go" comment as a check on his own opinion, finding no reason to examine his own opinion as a result.

This is what Dr. Woodhouse said in his deposition:

> But Dr. Woodhouse testified at his deposition: "Dr. Hans created the model, I provided the inputs, and Dr. Bawab peer reviewed the model." Doc. 92-2, p. 40; p. 107 as a consolidated document. Dr. Woodhouse said he was talking about the MADYMO model. *Id.* He said that there were "several iterations in the model and I reviewed them from a biomechanical perspective and I look at the data and Dr. Bawab reviews them from a mechanical engineering standpoint to make sure it's valid and reliable." *Id.*, p. 41; p. 108 as a consolidated document. When asked if he had told counsel for Defendant that Drs. Hans and Bawab were involved

>in the MADYMO program and analysis before today, Dr. Woodhouse said "no."  *Id.*  *See also* doc. 92-2, p. 49; p. 116 as a consolidated document.
>
>Dr. Woodhouse then said that Dr. Hans created the model, and Dr. Woodhouse reviewed the model and awaited the approval of Dr. Bawab.  *Id.*, p. 43; p. 110 as a consolidated document.  Dr. Woodhouse created a "case sheet" from the data relevant to this case and then sent it to Drs. Hans and Bawab, and they entered that case-specific date into the MADYMO program.  *Id.*, pp. 44-45; pp. 111-112 as a consolidated document.  Dr. Hans then created a MADYMO model from the data he received from Dr. Woodhouse.  *Id.*, p. 46; p. 113 as a consolidated document.  Dr. Woodhouse said that the model had been provided to counsel for Plaintiff on a DVD prior to the deposition.  *Id.*, pp. 47-48; pp. 114-115 as a consolidated document.  He said that there was "actually one iteration and you should have it."  *Id.*, p. 48; p. 115 as a consolidated document.  Dr. Woodhouse said that he *and* Dr. Bawab "sign off" on the technical aspects of the MADYMO model "in terms of the MADYMO inputs."  *Id.*, p. 49; p. 116 as a consolidated document.  *Dr. Woodhouse said that he relies upon the expertise of Dr. Bawab as a mechanical engineer for the validity and reliability of the model.  Id.  Dr. Woodhouse said that if he looked at the motion of the dummy in the model, observing the neck extension and the forces on the neck at that time, and if the result was not consistent with the biomechanics of the accident or the medical findings, "there must be an engineering reason," so he would consult with Dr. Bawab as to the "mechanical engineering reason why the model is performing that way."  Id.*, pp. 50-51; pp. 117-118 as a consolidated document.  He said: "that's done all the time in modeling."  *Id.*, p. 51; p. 118 as a consolidated document.

Doc. 128, report and recommendation on docs. 90 and 92, pp. 8-10 (emphasis added).

While the expression "signed off" on the document with regard to *inputs* seems different to me than saying that the model was "good to go," perhaps it is not.

Rule 26 report is not a meaningless formality.  But we now know, as of October 22, 2008, that Dr. Woodhouse probably has nothing more to say about the subject.  He has provided a supplemental Rule 26 report.  He put the data into the black box and he trusts the results because Dr. Bawab, an expert in mechanical engineering, found no problems.  This strikes me as the normal way scientists work.  Surgeons rely upon anesthesiologist during a surgery.  We cannot expect the Rule 26 expert report to report

something that did not occur.  Dr. Woodhouse had no expert understanding of the mechanical engineering opinion of Dr. Bawab.  He just knew that Dr. Bawab found no problems.  The data upon which Dr. Woodhouse relied has now been properly reported, and Rule 26 has been satisfied.  Dr. Bawab is not the retained expert, so a Rule 26 report was not due from him.  Doc. 128, p. 7.

It also seems to me that the delay in getting to this point is Defendant's fault.  Accordingly, I will extend the discovery period another 30 days to permit depositions of Drs. Woodhouse, Bawab, or Hans.

Accordingly, it is **RECOMMENDED** that Defendant's second motion to allow the expert testimony of Dr. Woodhouse, doc. 193, be **GRANTED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 31, 2008.


s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**